ZAPP v. SPRECKELS. (No. 7555.)

(Court of Civil Appeals of Texas. Galveston. March 7, 1918. Rehearing Denied June 27, 1918.)

1. CORPORATIONS ⊜99(1)—SALE OF STOCK— TAKING NOTES IN PAYMENT—"ISSUE."

Contract for purchase of increase of capital stock was not, where stock was not to be de-

livered until notes given therefor had been paid, an executed sale so as to be void under Const. art. 12, § 6, and Rev. St. 1911, art. 1146, and article 4725, subd. "e" and articles 4726, 4728, prohibiting issuance of stock except for money paid, etc.; "issue" meaning delivered.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Issue.]

2. CORPORATIONS ⬤⟝92 — SALE OF STOCK — TAKING NOTES IN PAYMENT.

Where under subscription contract stock was not to be delivered until notes given therefor were paid, notes would not be in violation of Const. art. 12, § 6, and Rev. St. 1911, art. 1146, and article 4725, subd. "e" and articles 4726, 4728, as to not issuing stock except for money paid, etc.

3. CORPORATIONS ⬤⟝92 — SALE OF STOCK — TAKING NOTES IN PAYMENT.

Where stock was not to be delivered to defendant until notes given therefor were paid, defendant is in no position to plead failure of consideration because of nondelivery of stock in action by indorsee on note first due; nothing having been paid on any of notes.

4. CORPORATIONS ⬤⟝92 — SALE OF STOCK — TAKING NOTES IN PAYMENT.

That plaintiff indorsee of note given for stock knew that stock was not to be delivered until notes given therefor had been paid would not prevent his recovery after having in good faith and before maturity paid full value for note.

5. EVIDENCE ⬤⟝442(1) — INCOMPLETE CONTRACT—PAROL EVIDENCE.

Where subscription contract did not state when stock was to be issued and delivered, testimony that it was understood between all parties that stock was not to be delivered until notes given therefor had been paid was admissible; contract being incomplete and executory.

Appeal from Fayette County Court; George Willrich, Judge.

Suit by J. C. Spreckels against Mrs. Isolda Zapp. Judgment for plaintiff, and defendant appeals. Affirmed.

L. D. Brown, of La Grange, for appellant. John T. Duncan, of La Grange, for appellee.

GRAVES, J. On a former day of this term this cause was affirmed without written opinion, and motion for rehearing overruled, but, in response to the very earnest motion of appellant heretofore granted, written statement of the ground upon which that disposition was made is now filed. The essentials of the case may be thus stated:

On the date therein named Mrs. Zapp executed the following contract for the purchase of stock in the insurance company it designates:

"No. 1039. Authorized Capital, $2,000,000.-00. No. Shares, 10. Subscription Contract to Increased Capital Stock of Southern National Insurance Company, Austin, Texas.

"Whereas, Southern National Insurance Company is a fire insurance corporation organized and incorporated under the laws of the state of Texas, with a paid-up capital stock of $120,000. ; and

"Whereas, it proposed to increase the capital stock of said company in accordance with the provisions of the laws of the state of Texas; and

"Whereas, said company has engaged Charles St. Clair, of Austin, Tex., as fiscal manager to sell said increase of capital stock:

"Now, therefore, I, Isolda Zapp, of Fayetteville, hereby subscribe for ten shares of the said capital stock of the par value of $100.00 each, said stock to be fully paid up and nonassessable, and I agree to pay therefor $200.00 per share as follows: $50.00 per share to be paid to said Charles St. Clair in cash on date of this subscription to be appropriated by him as compensation to him for sale and distribution of stock hereby subscribed for. * * *

"Said company alone has the right to accept or reject this subscription contract. If accepted, amount of $50.00 specified above as paid in cash to said Charles St. Clair on date hereof shall be considered duly earned by him, and not to be refunded to me under any conditions. If rejected, total payments made on date hereof shall be returned to me, no conditions or agreements other than those printed hereon shall be binding on any party hereto.

"Dated and signed at Fayetteville this the 13th day of November, 1911.

"[Signed]                    Mrs. Isolda Zapp.
"Chas. St. Clair, Agent."

In lieu of cash, which she did not have on hand, Mrs. Zapp signed and delivered with the contract her three promissory notes for the $2,000 called for in the purchase of the ten shares at $200 per share, two of them for $500 each, and one for $1,000, the one here involved being the first $500 note due six months after its date and payable to Charles St. Clair. The insurance company duly accepted the contract and delivered the note last mentioned to St. Clair, who soon thereafter, and before its maturity, sold it to appellee, J. C. Spreckels, for $475. When the note matured, Mrs. Zapp refused payment, and Spreckels brought this suit thereon.

Trial before a jury was had, and at the close of the evidence the court peremptorily instructed a verdict for Spreckels for the amount of the note, interest and attorney's fees, which being returned, judgment was accordingly entered against Mrs. Zapp, from which she presented this appeal.

It will be noted the contract does not state when the stock was to be issued and delivered, but appellant pleaded, and the undisputed proof showed, that she never paid anything on the stock, nor was any ever delivered to her; furthermore, the evidence is equally undisputed that no stock was to be delivered until the three notes had first been paid.

The insurance company finally went into liquidation, which did not occur, however, until about one year after this suit had been filed upon the first one of Mrs. Zapp's notes; the other two having then been past due for practically the same period.

[1] The judgment is first assailed upon the contention that the transaction represented by the quoted contract and the note sued upon "was a straight out sale of stock of the corporation for $2,000 worth of notes, and was not a subscription for stock and deferred payments, evidenced by notes, and was therefore void."

Section 6 of article 12 of our state Constitution, as well as statutes of similar import

(R. S. arts. 1146, 4725, subd. "e," and articles 4726 and 4728), are then invoked, the constitutional provision being in full as follows:

"No corporation shall issue stock or bonds except for money paid, labor done or property actually received, and all fictitious increase of stock or indebtedness shall be void."

Under the undisputed facts developed here, we are unable to agree with appellant that this transaction amounted to an executed sale of the stock, thereby bringing it within the inhibition of the provision just quoted, but think it amounted to nothing more than an executory contract of subscription for the stock. In construing the word "issue" as there used our courts have held that it means in effect the same thing as delivered; that no stock is in law "issued" until it is paid for and actually delivered to and title thereto vested in the purchaser. Farmers' & Merchants' State Bank v. Falvey, 175 S. W. 833; Cattlemen's Trust Company v. Turner, 182 S. W. 441.

It has been often further held that notes given as part of the subscription price for stock of a corporation are not void, but may be enforced as valid obligations, and that such stock can be contracted for and paid in installments. Commonwealth Bonding & Casualty Co. v. Hill, 184 S. W. 248; Cope v. Pitzer, 166 S. W. 447; Horn Bros. v. Baker, 173 S. W. 474, and cases cited; Davis v. Burns, 173 S. W. 476, and cases cited; Thompson v. First State Bank, 189 S. W. 116; Smoot v. Perkins, 195 S. W. 988; Zielinski v. Hernig, 195 S. W. 952; Irrigation Co. v. Deutschmann, 102 Tex. 201, 105 S. W. 486, 114 S. W. 1174.

[2-4] It follows from our fact findings that this note was not void as being in contravention of the cited constitutional and statutory provisions, nor was appellant in any position to plead failure of consideration because of nondelivery of the stock to her, never having paid any of the notes which, under the very terms of her own agreement, she was bound to pay before any stock was to be delivered to her; but she insists that at the time he purchased and paid value for the note Spreckels either knew it was given for stock in a corporation or was in possession of sufficient facts to put him upon inquiry, which, if pursued, would have disclosed to him the true conditions concerning its execution and delivery. This may be freely conceded without in the least changing the legal result above deduced. She agreed to purchase the capital stock of a corporation organized for a lawful purpose. She signed a subscription contract for the stock. This was lawful for her to do. As a part of this lawful transaction she executed the note sued on which in law is and was a legal obligation. As a part of this transaction it was agreed, and she so understood that she was not to get possession of the stock until she paid the notes and complied with her part of

the subscription agreement. Knowledge of these facts would neither have rendered the note sued on void in appellee's hands, nor prevented his recovering thereon, after having in good faith and before maturity paid full value therefor, as the proof shows he did.

[5] In the second place, appellant complains of the admission of testimony from different witnesses to the effect that it was well understood by all parties, including appellant, of course, that no stock was to be delivered to her until her notes had been first paid; the main objection being that the contract upon its face showed it to be an executed contract of sale, and the effect of the testimony admitted was to vary the terms of a written contract by parol evidence. We think this position untenable. Not only did this contract on its face fail to show it to be an executed and completed one, as appellant so contends, but plainly indicated its incompleteness and executory character. Moreover, as has been already stated, it did not specify when the capital stock should be "issued" or delivered and evidence upon a mere matter of detail not covered by the written contract is not changing or varying its terms. Not only so, but the pleadings of Mrs. Zapp herself, as has been above recited, charged that the transaction was unfinished and incomplete, and hence in effect executory.

It is evident from what has been said that in our opinion no reversible error was pointed out, which conclusion necessitated entry of the orders heretofore made.

Affirmed.